UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 05-CV-387-KKC

GREGORY ROBINSON                                                               PETITIONER

v.       **MEMORANDUM OPINION AND ORDER**

SUZANNE HASTINGS, WARDEN, ET AL.                              RESPONDENTS

Gregory Robinson, an individual presently confined at the United States Prison-Big Sandy in Inez, Kentucky ("USP-Big Sandy"), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241 [Record No. 1].[1]  He has paid the $5.00 filing fee.

This matter is before the Court for screening.  28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys.  *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972).  The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner.  *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983).  However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines the action: (I) is frivolous

---

[1] The Clerk of the Court has characterized this proceeding as a civil rights action falling under 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).  While the petitioner states that he seeks damages, that claim is incidental the central claims asserted herein, which are habeas claims asserted under 28 U.S.C. §2241 (for which the filing fee is $5.00).  The Court will instruct the Clerk to recharacterize this action as a habeas proceeding.

or malicious, or (ii) fails to state a claim upon which relief can be granted.

## RESPONDENTS

The petitioner names the following respondents: (1) Suzanne Hastings, Warden of USP-Big Sandy; (2) "S.O.E." Susan Walters; (3) Charles A. Malloy; (4) Dan. L. Dove; (5) K. M. White; and (6) Harrell Watts, "Administrator."

## CLAIMS

The petitioner alleges that on February 15, 2004, the Bureau of Prisons ("BOP") violated his right to due process under the Fifth Amendment of the United States Constitution when it revoked his previously issued "grandfather clause exemption from the BOP's mandatory adult functional literacy program. As a result of the revocation of his exemption, the petitioner states that he has sustained a loss in his prison job pay grade as well as back pay. He contends that requiring him now to resubmit to the requirements of the adult literacy program would violate the prohibition against ex post facto laws.[2] He argues that he is entitled to have his exemption reinstated.

The petitioner alludes to the fact that his foreign origin was a factor in the revocation of his exemption. To that extent, it appears that the petitioner may be claiming that his Fifth Amendment right to equal protection of the law may have been violated by the BOP's action.

## RELIEF REQUESTED

The petitioner seeks restoration of the exemption from participation in the adult literacy

---

[2] The United States Constitution states as follows:

" No Bill of Attainder or ex post facto Law shall be passed."

*Id.*, Article I, § 9, Clause 3.

program; $1,000.00 in lost wages; $2,000.00 for emotional distress; and attorney's fees.

## DISCUSSION
### 1. Habeas Claims Regarding Exemption
#### A. Exhaustion of Claims

The petitioner administratively exhausted his claim regarding the BOP's revocation of his exemption from the adult literacy program. On September 29, 2004, Harrell Watts of the National Inmate Appeals (the BOP's Central Office) denied the petitioner's request.[3]

Watts explained in his September 29, 2004 denial letter (as did Warden Hastings in her subsequent denials) that on September 10, 1992, the petitioner was exempted from the adult literacy program because he had a work assignment above the minimum pay grade, and had met the literacy requirement in effect at the time he was promoted beyond the minimum pay grade. According to Watts, the provisions of BOP Program Statement ("PS") 5350.28, Literacy Program (GED Standard) defined this exemption as a "grandfather clause."

Watts explained, however, that a prisoner could lose their "grandfather clause" exemption if "they are demoted based upon a poor performance appraisal or misconduct." [Watts Response to BP-11 Appeal] He advised the petitioner that there is no entitlement, which by its very nature is discretionary. Finally, Watts informed the petitioner that there was no evidence to suggest that the petitioner's country of origin had any impact on the BOP's decision to revoke the exemption.

Warden Hastings' subsequent denials were essentially the same. She added that while the petitioner had been confined in USP-Atlanta, he had been found guilty of Prohibited Acts 307 and

---

[3] The petitioner attached Watt's denial to his petition. The petitioner did not commence this proceeding until over a year later, on December 8, 2005. After receiving Watts' denial, the petitioner commenced filing a new round of administrative remedies; a BP-8 "Inmate Request to Staff" on October 29, 2004; a second BP-8 on November 9, 2004; a third BP-8 on May 10, 2005; and a third BP-8 on October 19, 2005. Warden Suzanne Hastings denied all of these BP-8's, in writing. Her denials are attached to the petition.

3

312 [4] and sanctioned with loss of job, 10-day phone restrictions, and "suspend 180 days clear conduct." [Hastings 11/17/05 Response to BP-8] Hastings determined, as had Watts a year before, that this disciplinary infraction rendered the petitioner ineligible for the "grandfather clause" exemption from the adult literacy class. She stated that the exemption had been removed in complete accordance with BOP policy.[5]

### B. Merits of Due Process Claim Regarding Exemption

The Attorney General requires the Bureau of Prisons ("BOP") to conduct adult literacy programs in federal prisons for the benefit of inmates who are functionally illiterate. *See* 18 U.S.C. §3624(f);[6] 28 C. F. R. §§544.70-75. Functionally illiterate inmates must attend adult literacy

---

[4]

The various levels of Bureau of Prisons ("BOP") offenses are listed in 28 C. F. R. §541.13, Table 3. The most serious offenses ("Greatest Category") are listed in Code Nos.100-199; the next level of offenses ("High Category") are listed in Code Nos. 200- 299; the next level of offenses ("Moderate Category") are listed in Code Nos. 300-399; and the final and lowest level of offenses ("Low Moderate Category") are listed in Code Nos. 400-499.

[5]

Hastings also stated that the petitioner's "Education Information" ("EDI") code had been changed to "XN" to reflect that he is not a citizen of the United States.

[6] The relevant provision of 18 U.S.C.A. §3624 states as follows:
. . . .
(f) Mandatory functional literacy requirement.--
    (1) The Attorney General shall direct the Bureau of Prisons to have in effect a mandatory functional literacy program for all mentally capable inmates who are not functionally literate in each Federal correctional institution within 6 months from the date of the enactment of this Act.
    (2) Each mandatory functional literacy program shall include a requirement that each inmate participate in such program for a mandatory period sufficient to provide the inmate with an adequate opportunity to achieve functional literacy, and appropriate incentives which lead to successful completion of such programs shall be developed and implemented.
    (3) As used in this section, the term "functional literacy" means--
        (A) an eighth grade equivalence in reading and mathematics on a nationally recognized standardized test;
        (B) functional competency or literacy on a nationally recognized criterion-referenced test; or
        (C) a combination of subparagraphs (A) and (B).

    (4) Non-English speaking inmates shall be required to participate in an English-As-A-Second-Language program until they function at the equivalence of the eighth grade on a nationally recognized educational achievement test.

4

programs for a minimum of 240 instructional hours or until a GED is achieved, whichever is first. 28 C. F.R. §544.70. Inmates who fall into this category must participate in adult literacy programs; participation is not optional. 28 C. F.R. §544.75. The BOP's policy is to deny certain privileges to any inmate who either refuses to participate in, withdraws from, or violates the terms of an exemption from the adult literacy program.

The district court in Maryland was faced with a claim somewhat similar to the petitioner's claims in *Burrell v. Gunja*, 2001 WL 34713499 (D. Md., June 8, 2001) (Only Westlaw citation currently available). Prisoner Burrell was enrolled in the adult literacy program. He had been reprimanded for poor attendance habits, as well as having been given the chance to take post-evaluation tests in preparation for the GED, which he refused to take. He was warned that his poor performance could subject his classification to be changed to "GED UNSAT." Next, Burrell was issued an incident report by the Camp Administrator because he had an unexcused absence from the program. Burrell filed a request seeking removal from the school "ASAP," stating that he understood that he would lose good time credits if he dropped out of the adult literacy program. He was removed from the program, having completed 667 instructional hours. *Id*. at *2.

When Burrell sought reinstatement into the adult literacy program, he was informed not only that mandatory inmates took precedence on the waiting list, but also that his EDI would not be changed to reflect satisfactory progress until he completed 240 continuous instructional hours. A year later, Burrell was allowed to fill a vacancy in the program, but because his EDI had since

---

(5) The Chief Executive Officer of each institution shall have authority to grant waivers for good cause as determined and documented on an individual basis.

changed from "GED SAT" to "GED UNSAT" in accordance with the BOP's policy, his good time credit had been recalculated from 54 days to 42. He argued that despite his prior participation for over 667 hours, he had been unable to pass the GED test because he had never been allowed to take the test; that he withdrew from the program because he feared he would not be allowed to take the test; and that a teacher would fabricate a reason to remove him from the program. *Id*. at *3.

Burrell argued in his §2241 petition that he had a liberty interest in continued participation in the adult literacy program because the statute authorizing it was cast in mandatory language. The district court disagreed, finding that under *Sandin v. Conner*, 515 U.S. 472, 478-87 (1995), provisions that merely procedural requirements, even if mandatory, cannot provide the basis for a constitutionally protected liberty interest. *Id*.

The court explained that Burrell's loss of ability to earn a maximum amount of good time for one year was a "collateral consequence of a change in his status in the literacy program based on his own conduct and did not rise to the level of a liberty interest deprivation." *Id*. at *4. Citing *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir.1995), the district court stated that neither the statute nor regulations at issue created a protected liberty interest in Burrell's ability to remain in the program or to continue earning good time at a certain rate once he started earning it. *Id*.[7]

---

[7]

The court set forth the following analysis:

A unilateral expectation of a sentence reduction is not protected. A prisoner must "have a legitimate claim of entitlement to it." *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir.1995 (quoting *Board of Regents v. Roth*, 408 U.S. 564 . . .(1972)). In other words, since the Supreme Court's decision in *Sandin*, in determining whether a liberty interest exists in good conduct credits, a distinction is made between the actual deprivation of accrued good time credits and the recommendation for withdrawal of credits, the denial of opportunity to earn credits, or other conditional possession of such credits. *Luken v. Scott*, 71 F.3d 192, 193-94 (5th Cir.1995) (opportunity to earn good time credits not protected under *Sandin*).

The BOP's literacy program clearly serves the valid penological interests of education and

6

Here, the retention of the instant petitioner's "grandfather clause" exemption to participation in the literacy program was conditioned on his maintaining good work performance and being involved in no incidents of misconduct.[8] After receiving his "grandfather clause exemption," the instant petitioner committed a BOP offense in the 300 level "Moderate" category while confined in Atlanta. Nothing in the petitioner's submission indicates that he disputes that claim, and he provides no documentation which would refute the claim that he committed a disciplinary infraction.

Here, the BOP was justified in revoking the petitioner's exemption. As in *Burrell*, to the extent that the petitioner sustained a resulting loss in his pay grade, that outcome "was a collateral consequence of a change in his status in the literacy program based on his own conduct and did not rise to the level of a liberty interest deprivation." *Burrell*, at *4.

---

rehabilitation. The requirement that an inmate remain in the program at a satisfactory level and earn a GED or risk a reduction in good conduct credit does not violate his constitutional rights. The reasons for petitioner's decision to withdraw from the literacy program are immaterial. Rather, like the inmate in *Bulger*, Burrell's withdrawal from the literacy program, his diminished good conduct credits, and his inability to regain immediate readmission to the program did not impose atypical and significant hardships on him in relation to the ordinary incidents of prison life. His inability to continue to accrue the maximum amount of good conduct credit was lost because he withdrew from the literacy program; thus, he was placed in the GED UNSAT category.

*Burrell v. Gunja*, 2001 WL 34713499, *3 - *4.

[8] *See* 18 U.S.C. §3624(b) (1) , which states as follows:

Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment. . . may receive credit toward the service of the prisoner's sentence . . . of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, *subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations*. Subject to paragraph (2), *if the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence* or shall receive such lesser credit as the Bureau determines to be appropriate. (Emphasis Added)

The petitioner claims that he has lost income in his prison job as a result of his revoked exemption. The loss of a prison job does not constitute a deprivation of a liberty interest because it is not an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. at 484. It is well settled that a prisoner has no constitutionally protected liberty interest in prison employment or a particular prison job. *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989); *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982), *cert. denied*, 459 U.S. 1150 (1983); *Bulger v. United States Bureau of Prisons*, 65 F.3d at 49-50 (Bulger's termination from his UNICOR job and reassignment to a non-UNICOR job did not impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life).

The reduction of the petitioner's *income* form a prison job would likewise not qualify as an atypical and significant hardship in relation to the ordinary incidents of prison life. As the petitioner has not alleged any atypical and significant hardship concerning the revocation of his "grandfather clause" exemption from the adult literacy program, he has failed to allege the deprivation of a federally recognized liberty interest. Without a liberty interest, the plaintiff has no due process claim. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir.1993). Without a due process claim, the instant petitioner fails to state a claim upon which the Court can grant relief under §2241. The petitioner's §2241 habeas claims will be dismissed with prejudice.

2. Claims for Monetary Damages

Given the Court's ruling on the merits of the §2241 habeas claims, discussed *supra*, it is unlikely that a new but related lawsuit seeking damages would have merit. The plaintiff is free to proceed with a suit after he demonstrates exhaustion, but he is advised of four matters.

8

First, to the extent that the petitioner seeks monetary damages, he has not exhausted those claims through the BOP's administrative procedures, 28 C. F.R. §542.10-19.[9]  Accordingly, the Court will dismiss his *Bivens* claim for damages without prejudice to his exhausting those claims.

Second, the petitioner is advised that claims for monetary damages must be presented not in a §2241 petition, but in a civil rights action under 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens*.[10]  As of April 9, 2006, the filing fee for a civil rights action for damages will be $350.00.  The petitioner would be required either to pay this filing fee in advance or to seek *in forma pauperis* status, and pay an initial and subsequent partial payments from his inmate account.

Third, to the extent that he seeks damages for emotional distress, such claims are not actionable because under the PLRA, an inmate may not bring a civil action for emotional or mental damages without a prior showing of a physical injury.  28 U.S.C. §1997e(e); *Mitchell v. Horn*, 318 F.3d 523 (3rd Cir. 2003) (prisoner asserting a mental or emotional injury as a result of conditions of confinement was required to show a prior physical injury which is more than a *de minimis*, but less

---

[9] The BOP administrative remedy procedure is set forth in 28 C. F. R. §542. 13-15.  Section 542.13(a) demands that an inmate first informally present his complaint to the staff [BP-8 form], thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy.  If the inmate cannot informally resolve his complaint, then he may file a formal written complaint (BP-9) "within fifteen (15) calendar days of the date on which the basis of the complaint occurred."  *See* §542.13(b).

"An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.  An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response.  When the inmate demonstrates a valid reason for delay, these time limits may be extended."  28 C. F. R. §542.15.

The BOP's response times are set forth in 28 C. F. R §542.18.  "Once filed, response shall be made by the Warden or Community Corrections Manager within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days."  *Id*.

[10] To establish a right to relief under *Bivens*, the plaintiff must plead and prove two essential elements.  First, he must show that he has been deprived of rights secured by the Constitution or laws of the United States.  Second, he must demonstrate that the defendants allegedly depriving him of those rights acted under color of federal law.  *Bivens*, 403 U.S. at 397.

than a significant injury); *Herman v. Holiday*, 238 F.3d 660 (5th Cir. 2001). The petitioner has not alleged that his emotional distress was the result of any form of physical injury or contact from the named respondents. Thus, his claims of emotional distress would not be compensable.

Fourth, to the extent that the plaintiff has named K. M. White (Director of the BOP's Mid-Atlantic Regional Office) and Harrell Watts, the two BOP officials who denied his grievances on appeal, the petitioner has not asserted a legitimate Fifth Amendment claim against these individuals. There is no inherent constitutional right to an "effective prison grievance procedure." *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991) (per curiam); *Flowers v. Tate*, 925 F.2d 1463 (6th Cir.1991); *Mays v. Wilkinson*, 181 F.3d 102, 1999 WL 282690, **1-**2 ( 6th Cir. (Ohio) April 28, 1999) (Unpublished Opinion); *Corn v. Lewis*, 996 F.2d 1214, 1993 WL 210702, **1 (6th Cir.(Ky.) June 15, 1993) (Unpublished Opinion).

In *Argue v. Hofmeyer*, 80 Fed. Appx. 427, 430, 2003 WL 22495834, (6th Cir.(Mich.) October 30, 2003) (Not selected for publication in the Federal Reporter), the prisoner-plaintiff argued that the defendants violated his right to petition the government for redress by repeatedly rejecting his grievances and placing him on modified access status. The Sixth Circuit affirmed the district court, citing *Flick v. Alba*, 932 F.2d at 729, and held that the plaintiff's allegations did not state a claim because there is no inherent constitutional right to an effective prison grievance procedure. *Argue v. Hofmeyer*, 80 Fed. Appx. 427, 430, 2003 WL 22495834, **2 - **3. For the same reason, the petitioner's claims against White and Watts would most likely fail.

Fifth, to the extent the plaintiff asserts an equal protection claim under the Fifth Amendment, the claim would appear to suffer from deficiencies. The equal protection principles of the due process clause of the Fifth Amendment provide "that all persons similarly situated should be treated

10

alike." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir.2005).

A plaintiff can not establish a violation of his equal protection rights "simply by showing that other inmates were treated differently." *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 114 S. Ct. 127 (1993). The instant petitioner fails to allege how he was treated differently from others similarly situated, or how he was treated differently without a rational basis.

CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) The Clerk of the Court is directed to reclassify this action **from** a civil rights action under 28 U.S.C. §2241 **to** a habeas corpus proceeding under 28 U.S.C. §2241.

(2) The §2241 petition for habeas corpus [Record No. 1] is **DENIED**, and the petitioner's §2241 claims are **DISMISSED WITH PREJUDICE**, *sua sponte*.

(3) The petitioner's claims for monetary damages, construed as falling under 28 U.S.C. §1331, are **DISMISSED WITHOUT PREJUDICE**.

(4) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named respondents.

Dated this 10th day of April, 2006.



**Signed By:**
*Karen K. Caldwell*
**United States District Judge**